# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **APRIL DAWN HOBBS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Case No. CIV-18-297-RAW-SPS** |
| ) | |
| **ANDREW M. SAUL,** ) | |
| **Commissioner of the Social** ) | |
| **Security Administration,** [1] ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

The claimant April Dawn Hobbs requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and the case REMANDED to the ALJ for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On June 4, 2019, Andrew M. Saul became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. Saul is substituted for Nancy A. Berryhill as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's.  *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was forty-three years old at the time of the administrative hearing (Tr. 43).  She completed the eighth grade and has worked as a nurse aide (Tr. 43, 62).  The claimant alleges that she has been unable to work since July 9, 2014, due to migraine headaches, bulging discs, bleeding problems, anxiety, depression, osteoporosis, and bilateral shoulder problems (Tr. 254).

## Procedural History

In October 2015, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  Her applications were denied.  ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 20, 2017 (Tr. 15-30).  The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) with occasional stooping, kneeling, crouching, and crawling but never climbing ladders, ropes, or scaffolding (Tr. 21). The ALJ also found the claimant could reach with her right upper extremity occasionally in all directions but could not reach overhead, and required a sit/stand option he defined as a brief positional change from sitting to standing and vice versa with not more than one change in position every half hour and without leaving the work station so as not to diminish pace or production (Tr. 21). As to environmental limitations, the ALJ found the claimant should avoid concentrated exposure to dust, fumes, and poorly ventilated areas (Tr. 21). Due to psychologically-based factors, the ALJ found the claimant could understand, remember, and apply simple and detailed instructions, concentrate and persist for extended periods in order to complete simple and detailed job tasks, and could maintain superficial work-related contact, including receiving supervision from supervisors, but could have no more than occasional work-related contact with the general public (Tr. 21-22). The ALJ then concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was other work she could perform in the national economy, *e. g.*, merchandise mailer, advertising material distributor, and routing clerk (Tr. 28-30).

## Review

The claimant contends that the ALJ erred by failing to: (i) properly evaluate the opinion of treating physician Dr. Kim Kurvink, and (ii) resolve a conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT") and its companion the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles ("SCO"). The undersigned Magistrate Judge agrees with both contentions and the Commissioner's decision should therefore be reversed.

The ALJ determined that the claimant had the severe impairments of migraines without aura and without status migrainosus not intractable, osteoporosis, chronic obstructive pulmonary disease ("COPD"), chronic left-sided back pain without sciatica, fibromyalgia, prior cumulative trauma to the right shoulder resulting in abnormalities due to internal derangement with impingement syndrome, epicondylitis of the right arm/elbow, lumbago, plantar callosity, chronic anxiety controlled with medication, depression, bipolar disorder, obsessive personality disorder, and panic disorder with agoraphobia, but that her gastroesophageal reflux disease ("GERD"), estrogen deficiency, and gastritis were non-severe (Tr. 18). The relevant medical records reveal that the claimant fell at work on January 11, 2012, injuring her right shoulder and back. Thereafter, Dr. Mac Moore performed surgery on the claimant's right shoulder to repair a rotator cuff tear in December 2012 (Tr. 842-44). By July 2013, Dr. Moore noted the claimant still had some discomfort with extremes of range of motion, but she had full range of motion and full strength in her repaired rotator cuff (Tr. 838). He released her to return to work with the permanent

restrictions of "no lifting, pushing, pulling greater than 25 pounds. Restricted overhead reaching." (Tr. 838).

As to her back pain, the claimant presented to physician assistant Paul Gibson on January 11, 2012, and reported pain in her tailbone after she fell at work earlier that day (Tr. 990-91). Mr. Gibson diagnosed her with sacrococcyx contusion and lumbar spine sprain (Tr. 991). Thereafter, Dr. Kim Kurvink treated the claimant's sacrococcyx contusion and low back pain through March 2012 (Tr. 980-89). An MRI of the claimant's lumbar spine conducted on February 24, 2012, revealed a minor circumferential disc bulge at L4-L5 with no evidence of neural foraminal stenosis or central canal stenosis, desiccation of the disc at L5-S1 without loss of interspace height, and a minor circumferential disc bulge at L5-S1 without significant neural foraminal stenosis or spinal stenosis (Tr. 599).

The claimant established care with Dr. Robert Remodino on May 14, 2012, and reported severe low back pain that extended to her tail bone and occasionally radiated to her right hip and leg (Tr. 614). He referred the claimant for a sacrum and coccyx CT scan, the results of which revealed no fracture, as well as physical therapy and steroid injections (Tr. 612, 621). At a follow-up appointment on October 15, 2012, Dr. Remodino found the claimant was at maximum medical improvement because she was not a surgical candidate, there was no fracture in her sacrum or coccyx, and there were only mild changes at L4-5 and mild degenerative changes at L5-S1 (Tr. 609). He released her to return to work with a "permanent 20-pound weight limit, placing her in the medium work category." (Tr. 609).

Dr. Misty Branum regularly treated the claimant for, *inter alia,* fibromyalgia and low back pain from September 2013 through November 2014 (Tr. 749-71). Dr. Branum consistently found muscle spasms in the claimant's lumbar spine and mild pain with motion (Tr. 749-71).

Dr. Paul Krautter regularly treated the claimant for, *inter alia,* chronic low back pain from December 2014 through May 2016 (Tr. 544-98, 779-800). At the outset of treatment, Dr. Krautter noted the claimant had pain and tenderness in her hips and lower lumbar spine, but by May 2015, her musculoskeletal examination was normal except for tenderness in her back, and by January 2016 it was completely normal (Tr. 544-98, 796-800). Thereafter, the claimant's musculoskeletal examinations were normal through May 2016, Dr. Krautter's last treatment note in the record (Tr. 779-95).

On April 1, 2016, the claimant presented to Dr. Carol Gambrill and reported pain in her right shoulder that began five weeks earlier (Tr. 773-77). She reported no new injury but stated that her symptoms were similar as they were prior to her December 2012 surgery (Tr. 773). Dr. Gambrill found pain with palpation of the claimant's anterior and posterior right shoulder joint, limited range of motion due to pain, limited external and internal rotation, a positive empty can test, and weakness with abduction against resistance (Tr. 776). She referred the claimant back to Dr. Moore (Tr. 776).

On August 10, 2016, the claimant returned to Dr. Kurvink and reported that she had low back pain for years and that she had been unable to work since she fell in January 2012 (Tr. 948). On physical examination, Dr. Kurvink found the claimant had mild tenderness in her trapezius muscles, moderate tenderness in her lower lumbar spine and lumbar

-7-

paraspinous muscles, and that straight leg raising to sixty degrees bilaterally elicited back pain that radiated to the claimant's hips (Tr. 950). At a follow-up appointment on October 11, 2016, the claimant reported that her back pain improved and Dr. Kurvink noted mild tenderness in her lumbar spine, lumbar muscles, and left hip, as well as full flexion (Tr. 955-56). On January 26, 2017, the claimant stated her pain was rated at 7/10 most of the time and improved to 3-4/10 with medication (Tr. 960). Dr. Kurvink found moderate tenderness at L1 and reduced lumbar flexion (Tr. 961). At a follow-up appointment on April 25, 2017, the claimant reported continued improvement in her back pain, but reported intermittent pain in her right shoulder (Tr. 1019). Dr. Kurvink found moderate tenderness in the lower half of the claimant's spine and left sacroiliac joint, reduced lumbar flexion, moderate tenderness in her right shoulder anteriorly, and reduced right shoulder abduction (Tr. 1020).

On April 25, 2017, Dr. Kurvink completed a form regarding sedentary work requirements, a physical RFC assessment, and a clinical assessment of pain (Tr. 847-55). She indicated on the sedentary work requirement form, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours in an eight-hour workday, lift/carry ten pounds, lift/carry five pounds repetitively, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 848). On the RFC questionnaire, Dr. Kurvink indicated that the claimant could sit for twenty minutes at a time for less than two hours total in an eight-hour workday, could stand for twenty minutes at a time for less than two hours total in an eight-hour workday, required a ten-minute period of walking every

-8-

twenty minutes, and required a sit/stand option (Tr. 851-52). Dr. Kurvink also found that the claimant could rarely lift/carry less than ten pounds, could never lift/carry anything above ten pounds, could never use her right arm for reaching, and could only use her left arm for reaching ten percent of an eight-hour day (Tr. 852-53). Dr. Kurvink stated that the claimant could occasionally climb stairs, but could never twist, stoop, crouch/squat, or climb ladders (Tr. 853). She indicated that the claimant's fibromyalgia with low back pain and right shoulder pain was aggravated by cold temperatures, thus her ability to work in a cold environment was also limited (Tr. 854). Dr. Kurvink stated that the limitations she found had been applicable since January 11, 2012 (Tr. 855).

The claimant first argues that the ALJ erred in his analysis of Dr. Kurvink's opinion. Medical opinions of a treating physician such as Dr. Kurvink are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id*. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is

rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ gave diminished weight to Dr. Kurvink's opinion because he found it was inconsistent with: (i) her own treatment notes that reflected effective management of the claimant's symptoms with conservative treatment, no specialist referrals, no gait abnormalities, and no evidence of edema, cyanosis, swelling, or effusions in the claimant's extremities; (ii) (unspecified) examinations where the claimant had essentially normal range of motion in her cervical spine, left shoulder, hips, knees, and wrists; and (iii) (unspecified) examinations where the claimant had normal motor strength and no neurological deficits (Tr. 27). The ALJ also gave diminished weight to Dr. Kurvink's opinion because she tied her limitations to the claimant's fibromyalgia, a diagnosis that he determined was made without trigger point testing, laboratory studies, or additional workups as required by Soc. Sec. Rul. 12-2p, 2012 WL 3104869 (July 25, 2012) (Tr. 27).

The ALJ rejected Dr. Kurvink's opinions in large part because they were not supported by the objective medical records. Although the ALJ did refer to some specific evidence when discussing the inconsistencies between Dr. Kurvink's opinion and the evidence of record, he minimized or mischaracterized much of it. For example, the ALJ

stated that Dr. Kurvink's treatment effectively managed the claimant's symptoms, but her treatment notes show the claimant reported continued pain despite medication, although medication did improve her pain (Tr. 948-63).  Similarly, the ALJ found Dr. Kurvink largely based her opinion on the claimant's fibromyalgia diagnosis, but Dr. Kurvink indicated on the RFC form that the claimant's diagnoses also included chronic low back pain and chronic right shoulder pain (Tr. 850).  Finally, the ALJ relied on normal examination findings as to the claimant's *cervical spine* and *left shoulder*, but failed to discuss Dr. Kurvink's abnormal findings as to her *lumbar spine* and Dr. Gambrill's abnormal findings as to her *right shoulder*, all of which directly affect the claimant's mobility (Tr. 773-77, 946-63, 1017-24).  This is improper picking and choosing.  *See, e. g., Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) ("An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."), *citing Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) and *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004).  *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'").

The claimant further asserts that the ALJ erred in identifying jobs she could perform because there was a conflict between the VE's testimony and the DOT and its companion the SCO.  At the administrative hearing, the ALJ elicited testimony from a VE to determine if there were jobs a hypothetical person could perform with various limitations.  (Tr. 62-

65). The ALJ posited three hypothetical questions to the VE, including one with the following limitations:

> . . . limited to light work. The individual would be able to understand, remember and apply simple and detailed instructions and concentrate and persist for extended periods in order to complete simple and detailed job tasks. The individual would be capable of maintaining superficial work-related contact, including receiving supervision from supervisors. However, she would have no more than occasional contact with the general public. The individual would be unable to climb ladders, ropes and scaffolding and would be limited to just occasional stooping, kneeling, crouching and crawling. Would need to avoid concentrated exposure to dust, fumes and poorly ventilated areas. Would be limited in the right upper extremity to just occasional reaching in all directions, except no overhead reaching. The individual would finally require a sit/stand option. . .

(Tr. 62-63). The VE asked the ALJ to repeat his reaching limitations, which he did, and then asked if the hypothetical individual was right hand dominant, to which the ALJ responded "Yes." (Tr. 63). The VE testified that such a person could not perform the claimant's past relevant work, but could perform the jobs of merchandise marker, DICOT § 209.587-034, advertising material distributor, DICOT § 230.687-010, and routing clerk, DICOT § 222.587-038 (Tr. 64). The VE also testified that she consulted other resources for her testimony as to the sit/stand option because it was not addressed in the DOT, and then stated that "[e]verything else within the hypothetical does not conflict with the DOT." (Tr. 65). The ALJ determined that the claimant's RFC included the limitations from the hypothetical posed to the VE set forth above and he adopted the VE's testimony that the claimant could perform the jobs of merchandise marker, advertising material distributor, and routing clerk (Tr. 21, 28-30).

Under Social Security Ruling 00-4p, "When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified." 2000 WL 1898704, at *4 (Dec. 4, 2000). Although the VE testified that there was no conflict between his testimony and the DOT, there *is* a conflict that the ALJ was required to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir.1999) ("[T]he ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability."). A conflict exists here because the DOT descriptions for all three jobs identified by the VE and relied upon by the ALJ require frequent reaching, *see* DICOT §§ 209.587-034, 230.687-010, 222.587-038, while the claimant, who is right-handed, is limited to occasional reaching in all directions with her right upper extremity and is precluded from reaching overhead with her right upper extremity. *See, e. g., Carson v. Barnhart,* 140 Fed.Appx. 29, 36-37 (10th Cir. 2005) (finding the ALJ erred by failing to resolve a conflict where RFC limited the claimant to occasional reaching with his right, dominant arm, and the identified jobs required frequent reaching); *Stiefel v. Colvin,* 2015 WL 13650128 at *6-7 (D.N.M. November 23, 2015) (finding the ALJ erred by failing to resolve a conflict where RFC limited the claimant to frequent handling and grasping with his left, dominant hand, and the identified jobs required constant handling and grasping).

-13-

The Commissioner contends that because the claimant is not limited with her left arm, she could perform the jobs identified by the VE despite the limitations with her dominant, right arm. In support of this contention, the Commissioner states that the DOT does not differentiate between bilateral reaching and unilateral reaching and cites various judicial decisions finding no conflict between VE testimony and the DOT involving the capabilities of claimants to perform various jobs with one arm or one hand. However, the undersigned Magistrate Judge finds that these cases are distinguishable in that they either involve limitations with the non-dominant arm or the reaching limitations involve only overhead reaching. In this case, the claimant is unable to reach overhead with her dominant arm and is further limited to occasional reaching in all other directions with her dominant arm. Thus, the ALJ must resolve the conflict between the VE's testimony and the DOT before relying on such testimony as substantial evidence and the undersigned Magistrate Judge declines to adopt the Commissioner's arguments in this regard. *See Haga*, 482 F.3d at 1207–1208 ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.") (citations omitted).

Accordingly, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence in the record. If the ALJ's subsequent analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 26th day of February, 2020.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**